In re INDIANA CONCRETE PIPE CO.

Petition of WHITING CORPORATION.

District Court, N. D. Indiana, Hammond Division.   July 10, 1929.

No. 797.

Crumpacker & Friedrich, of Hammond, Ind., for petitioner.

William J. Whinery, of Hammond, Ind., for trustee in bankruptcy.

SLICK, District Judge. Petitioner seeks reclamation of certain cranes and machinery sold by it on written contract to Bayliss, Million & Million, a corporation, on the ground, first, that petitioner never parted with title because the contract was not complied with; and, second, because the transaction was tainted with fraud. The decision of the referee was against petitioner, and the petition was dismissed for want of equity, and, from this decision of the referee, petitioner petitions this court for review.

The findings of the referee are that there was no contract between the petitioner and the bankrupt, but that there was a contract between the petitioner and Bayliss, Million & Million, Inc., which contract was not a conditional sales contract; that there was no agreement or understanding between the petitioner and Bayliss, Million & Million that the title to the equipment contracted for should remain in the petitioner until paid for. The referee further finds that the original contract was entered into December 30, 1926, and a supplemental contract made January 18, 1927; that the cranes and machinery were shipped at Harvey, Ill., March 18, 1927, to the Indiana Concrete Pipe Company, bankrupt, and installation finished about March 23, 1927; that involuntary petitions in bankruptcy were filed for the Indiana Concrete Pipe Company on May 11, 1927, and for Bayliss, Million & Million May 19, 1927; that the reclamation petition herein was filed on January 3, 1929; and that petitioner was guilty of laches.

It should be stated that the referee did not have before him a transcript of the evidence, which is rather voluminous, at the time he made his findings in this matter; a transcript of the evidence having been procured by the petitioner and filed with its petition for review.

Bankrupt, the Indiana Concrete Pipe Company, and Bayliss, Million & Million were separate and distinct corporations, but had the same executive officers, secretary and president. Petitioner did not know anything concerning the Indiana Concrete Pipe Company, bankrupt. It had all its dealings with Bayliss, Million & Million, Inc. The contract for the purchase of the cranes and machinery was signed by Bayliss, Million & Million, and was by them ordered shipped to Harvey, Ill., and delivered to and installed in the building of the Indiana Concrete Pipe Company, the bankrupt.

An examination of the transcript of evidence and the very able and exhaustive briefs filed in the case discloses that the contract was not approved by the petitioner until March 25, 1927, long after petitioner had been exhibited a financial statement of the purchaser. This statement showed the net worth of the contract purchaser to be $121,000, and the evidence discloses that petitioner relied on this statement in making this contract and in shipping the machinery. Petitioner asked the secretary of the contract purchaser for a financial statement, and was referred to a bank, and at this bank the petitioner was shown the financial statement. This was some time in January, 1927, and long before delivery. The bankruptcy proceeding was started within less than three weeks after the cranes and machinery were delivered, and it abundantly appears that the financial statement relied upon by the petitioner was false.

Under this state of facts, the conclusion is inevitably forced that the bankrupt could not have intended to pay for the machinery when it was delivered, for it had not the ability to make the payment. The contract provided for the payment of one-third in cash at the time of delivery. It is not necessary that petitioner show the intent of the contract purchaser not to pay. The evidence clearly discloses that the extent of the bankrupt's assets was misrepresented, and, if petitioner relied on this statement and it was false, fraud is established.

The trustee in his brief claims that petitioner was guilty of laches in filing this petition, and the referee finds that the petitioner was guilty of laches in setting up his claim. It should be noted, however, that the answer of the trustee to the original petition does not set up the defense of laches; it being for the first time suggested in the trustee's brief filed with the referee. Petitioner, however, while pointing out this failure on the part of the trustee, meets the question of laches fairly. There can be no question but

that, when petitioner had finished with the installation, it (petitioner) was still relying on the false statement furnished it, and there can be no question but that petitioner from that date, to wit, March 13th, almost daily endeavored to make collection from Bayliss, Million & Million up to the time when a receiver was appointed in the state court, which was twenty-one days thereafter. The testimony shows that it was endeavoring constantly to make this collection; that it called the secretary on the phone and was unable to get him; that trips were made from Harvey, Ill., to the city of Hammond; and that during all this time petitioner had no knowledge of the insolvency of the contract purchaser, its first knowledge of such insolvency coming when it learned of a state court receivership. There can be no laches where delay has been caused or induced by fraud or concealment, and a party is not deemed to be guilty of acquiescence if he is without knowledge of a fraud, or where the existence of fraud has been concealed from him. Therefore petitioner is not chargeable with laches from the time of the delivery of the machinery to the time of the appointment of a receiver in the state court.

■■ The trustee has not shown that the estate was in any wise injured by the delay in filing this claim, and petitioner makes the rather startling statement in its reply brief that it, together with other equipment owners, "stood by at the *request* of the trustee, and delayed filing their petitions at his request, so as to enable him * * * to negotiate a sale." The brief containing this statement was mailed May 21, 1929, and states that counsel for petitioner has sent a copy to counsel for the trustee. Certainly a party cannot be charged with laches if the delay was induced by the party setting up the laches as a defense, and certainly, if this is not true, counsel for the trustee has had ample opportunity to deny it; and the court's knowledge of the fighting characteristics of counsel for the trustee justifies the unavoidable inference that, if such statement were untrue, counsel would have been before the court long before this in a strenuous and belligerent denial.

■■ Laches or delay must be for an unreasonable length of time, and of course the time depends on the circumstances of each case. It must have worked an injury or result in a disadvantage to the adverse party, and is never a bar where the circumstances constitute an excuse. It is the law that, where fraud exists, the courts will and should be very loathe to enforce laches. The rule that delay is always to be excused if induced by the adverse party should not require stating. No one should be permitted to profit by his own inducement. So that, if it is true that the delay in filing this claim was caused by the trustee, or was at his request or suggestion, he certainly should not be permitted at this time to take advantage thereof.

■ It was and is the duty of the trustee to marshal all the assets in a bankruptcy estate, sell or dispose of them to the best advantage, and create as large a fund as possible for the benefit of creditors. It is not, however, his duty to, and equity does not dictate that he should, sell property obtained by the bankrupt by fraud or misrepresentation, on which no payments have been made, in order to create more assets for the payment of the other creditors.

■ The machinery and cranes delivered in this case were large, bulky, and cumbersome. They were shipped from Harvey, Ill., to Hammond, Ind., on a contract in which the purchaser agreed to pay one-third cash on delivery. It was a practical impossibility for petitioner to deliver these goods and demand payment of the one-third in cash at the time of delivery. Petitioner was justified in shipping the heavy machinery, and sending its superintendent to install it relying on the agreement of the purchaser to pay one-third cash, especially where the purchaser had represented its net worth to be $121,000. The officers of the purchasing corporation, Bayliss, Million & Million, were identical with the officers of the bankrupt corporation, and the bankrupt corporation is chargeable with notice of everything that came to the knowledge of its president and secretary.

The conclusion is inevitable that fraud was practiced at the inception of this transaction; that petitioner relied on representations made to it, which were false, concerning the net worth of the purchasing corporation. The bankrupt never paid anything and never contracted to pay anything, and yet it is found in possession of new and valuable machinery. The estate will not be injured by taking from the trustee property that never rightfully belonged to it. Equity and good conscience do not require this.

The petition to review is sustained. The order of the referee that the reclamation petition be dismissed is revoked. The reclamation petition is allowed, and the receiver and trustee is hereby ordered to deliver the property described in the petition into the possession of the petitioner and to permit the petitioner to remove the same from the property

of the bankrupt estate. It is further ordered that the petitioner recover its costs in this matter, including $32.50 paid by it for a transcript of the evidence. To all of which the trustee is granted an exception.